# EXHIBIT A



## PROCESS SERVER DELIVERY DETAILS

| | |
|---|---|
| Date: | Wed, May 12, 2021 |
| Server Name: | Kyle Clutter |

| Entity Served | CONTINENTAL TIRE THE AMERICAS, LLC |
|---|---|
| Agent Name | 02957019 |
| Case Number | 2021-L-18 |
| Jurisdiction | IL |



## IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT
## JEFFERSON COUNTY, ILLINOIS

| | |
|---|---|
| TYLER WALLACE, | ) |
|     Plaintiff, | ) ) ) |
| v. | )    Case No. 2021-L-18 |
| CONTINENTAL TIRE THE AMERICAS LLC, PAUL CHOBANIAN, and JEFFREY ROCK, | ) ) ) ) ) |
|     Defendants. | ) |

### SUMMONS

To each defendant:    Continental Tire the Americas, LLC
                          c/o CT Corporation System
                          208 S. LaSalle St., Ste. 814
                          Chicago, IL  60604

    **YOU ARE HEREBY SUMMONED** and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, in the office of the clerk of this court within 30 days after service of this summons, not counting the day of service.  **IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.**

   E-filing is now mandatory for documents in civil cases with limited exemptions.  To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp, or talk with your local circuit clerk's office.

To the Officer:

    This summons must be returned by the officer or other person to whom it was given for service, with indorsement of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned and so indorsed.

This summons may not be served later than 30 days after its date.



(Seal of Court)

WITNESS ____5/7/2021_____,2021.

_____
(Clerk of the Circuit Court)

By:_____

_____
(Plaintiff's Attorney or plaintiff if he/she is not represented by an attorney)
Name:          James D. Price, Wham & Wham Lawyers
Attorney for:   Tyler Wallace
Address:       212 E. Broadway
City:            Centralia, IL  62801
Telephone:    618-532-5621
Email:          jdp@whamlawyers.com

Date of service: _____, 2021

(To be inserted by officer on copy left with defendant or authorized individual accepting service.)

FILED
SECOND JUDICIAL COURT
5/7/2021 9:28 AM
RANDY POLLARD
CLERK OF THE CIRCUIT COURT
JEFFERSON COUNTY ILLINOIS

IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT
JEFFERSON COUNTY, ILLINOIS

| | | |
|---|---|---|
| TYLER WALLACE, | ) | |
| Plaintiff, | ) ) ) | 2021L18 |
| v. | ) ) | Case No. 2021-L-_____ |
| CONTINENTAL TIRE THE AMERICAS LLC, PAUL CHOBANIAN, and JEFFREY ROCK, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

NOW COMES the plaintiff, Tyler Wallace, by and through his attorneys, Wham & Wham, and for his Complaint against defendants Continental Tire the Americas LLC, Paul Chobanian and Jeffrey Rock, states as follows:

### FACTS COMMON TO ALL COUNTS

1.  Plaintiff Tyler Wallace ("Wallace") was at relevant times a resident of Mulkeytown, Franklin County, Illinois, and is presently as resident of Royalton, Franklin County, Illinois.

2.  Defendant Continental Tire The Americas LLC ("CTA") is, and was at all relevant times, a limited liability company with a principal place of business in Fort Mill, South Carolina, and doing business in Jefferson County, Illinois.

3.  Defendant Paul Chobanian ("Chobanian") was at all relevant times employed by CTA and a citizen of Jefferson County, Illinois.

4. Defendant Jeffrey Rock ("Rock") was at all relevant times employed by CTA and a citizen of Jefferson County, Illinois.

5. Wallace was employed at CTA for more than nine years, and held the position of stock prep sequencer for the last three years of his employment and until his termination on March 2, 2021.

6. Three years prior to his termination, a friend of Wallace's, whom he considered to be his brother, and was recognized in the community as such, committed suicide.

7. The suicide was extremely traumatic for Wallace, and, as a result, he sought treatment for depression, anxiety, and shift work sleep disorder.

8. On or about January 24, 2021, Wallace arrived for work at CTA and thereafter advised his employer that it was a difficult date for him because it was the three year anniversary of his brother's death. CTA thereafter advised Wallace's coworkers, including Chobanian, that Wallace was struggling with the anniversary of his brother's death.

9. On or about January 24, 2021, Wallace was the target of outrageously abusive comments made by his coworker, Chobanian, on an internal company messaging system using the suicide of Wallace's brother as the basis for his intentionally hostile verbal attack.

10. On information and belief, the wording of Chobanian's message was to the effect of "... At least my brother is still breathing."

11. Chobanian's comments instantly caused Wallace to feel extreme levels of psychological and emotional distress.

12. Wallace's distress was so great that he was unable to continue working and was forced to seek medical attention for the effects of the distress.

13. Wallace went to the emergency room where it was discovered that his blood pressure had reached a dangerously high level. Wallace had never experienced a similar episode prior to this occasion.

14. Wallace was admitted in the hospital for further evaluation. He was subsequently prescribed antianxiety and blood pressure medication to treat his symptoms and discharged the next day.

15. Upon discharge, Wallace immediately filed the requisite paperwork, as required by CTA, including a physician's certification, to request leave pursuant to The Family and Medical Leave Act (29 U.S.C. §2601, "FMLA").

16. Wallace returned to work (since his FMLA request had not yet been approved), as he wanted to avoid the potential adverse effects a violation of CTA's attendance policy would have on his employment, despite lacking medical clearance.

17. Upon his return to CTA, Wallace met with CTA's human resources department in order to address Wallace's concerns regarding the impact on his health the working conditions relating to Chobanian's interactions has had with Wallace, and to foster an approach to prevent such detrimental effects from occurring again in the future.

18. CTA failed to address Wallace's concerns.

19. Thereafter, Wallace contacted CTA's corporate human resources department, and was informed that they would investigate the situation.

20. No action was taken to accommodate Wallace.

21. Despite his dissatisfaction with the situation, Wallace continued to report for work pending CTA's approval of his FMLA leave application, so as to not incur points pursuant to CTA's attendance policy.

22. Wallace's blood pressure remained at dangerously high levels throughout this time any continued to suffer from extreme anxiety, conditions for which Wallace was medicated to help alleviate.

23. Wallace's application for FMLA leave was approved on February 18, 2021, but CTA never notified Wallace that his leave request had been approved.

24. Although unknowingly approved for FMLA leave, Wallace reported for his overnight shift, on February 24, 2021.

25. On February 25, 2021 at approximately 1:30 a.m., Wallace was at his desk on his cell phone during his lunch break.

26. At said time, Rock, a safety officer at CTA, approached Wallace from behind and kicked the back of Wallace's chair and told him to "try and stay awake."

27. Wallace denies that he was sleeping, but Rock reported the incident to CTA management nonetheless.

28. Despite Wallace's denial that he was asleep and on his lunch break, Rock reported Wallace for sleeping on the job.

29. The next day, CTA informed Wallace that he was suspended pending an investigation into the allegation that he was sleeping on the job.

30. Wallace was terminated on March 2, 2021 for the stated reason of sleeping on the job.

## COUNT I
### *(Retaliatory Discharge v. Continental Tire The Americas LLC)*

NOW COMES the plaintiff, Tyler Wallace, by and through his attorneys, Wham & Wham, and for Count I against defendant Continental Tire the Americas LLC, states as follows:

31. Plaintiff repeats and realleges paragraphs 1-30, above, as paragraphs 1-30 of Count I, herein.

32. During the course of his employment at CTA, Wallace performed his job properly and fulfilled all legitimate expectations of CTA as his employer.

33. Prior to the occurrence complained of, Wallace had never received a disciplinary warning or "write-up" during his nine years of employment at CTA.

34. Throughout his tenure at CTA, Wallace was an exemplary employee, and until the time of his discharge, and for some time thereafter, was a candidate being considered for multiple managerial positions within the company.

35. Wallace's alleged sleeping was used by CTA as a pretext to terminate his employment.

36. The actual reason for Wallace's discharge was retaliation for exercising his rights under The Family and Medical Leave Act and, and the reporting of CTA's failures to accommodate Wallace on the local level to CTA's corporate headquarters.

37. It is unlawful under 29 U.S.C. §2615 for an employer to discharge or in any other manner discriminate against an employee for exercising their rights under the Family and Medical Leave Act.

38. It is a violation of clearly mandated Illinois public policy to discharge an employee for exercising their rights under the Family Medical Leave Act.

39. As a proximate result of the aforesaid acts of CTA, Wallace has been caused to lose wages and benefits that he would otherwise have earned and will continue into the future to lose wages and benefits. In addition thereto, Wallace has endured pain, suffering, severe emotional distress, mental anguish, and humiliation as a proximate result of CTA's aforesaid acts.

40. The aforesaid acts of CTA were malicious and oppressive and in order to deter CTA from future conduct of such nature, in addition to compensatory damages, punitive damages should be awarded.

WHEREFORE, the plaintiff, Tyler Wallace, prays for judgment in his favor and against the defendant, Continental Tire The Americas, LLC, in an amount in excess of $50,000.00 which will reasonably and adequately compensate him for his damages, plus costs of suit, attorney's fees, punitive damages, and for such other and further relief this Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY OF 12 PERSONS**

## COUNT II
### *(Intentional Infliction Of Emotional Distress v. Paul Chobanian)*

NOW COMES the plaintiff, Tyler Wallace, by and through his attorneys, Wham & Wham, and for Count II against defendant Paul Chobanian, states as follows:

41.    Plaintiff repeats and realleges paragraphs 1- 40, above, as paragraphs 1- 40 of Count II, herein.

42.    Chobanian's use of the suicide of Wallace's brother as the basis for his verbal attack was extreme and outrageous.

43.    Chobanian knew that Wallace was peculiarly susceptible to emotional distress with regard to the suicide of his brother.

44.    Chobanian intended that his comments would inflict severe emotional distress on Wallace, and/or knew that there was a high probability the comments would cause severe emotional distress.

45.    As a direct and proximate result of Chobanian's extreme and outrageous conduct, Wallace has suffered and continues to suffer from severe emotional distress.

46.    In addition to severe emotional distress, Chobanian's extreme and outrageous conduct resulted in physical manifestations of such emotional distress, including, but not limited to, dangerously high blood pressure, increased heart rate, inability to sleep and other physical complaints not previously experienced by Wallace, for which Wallace has sought medical care and incurred medical expenses.

WHEREFORE, the plaintiff, Tyler Wallace, prays for judgment in his favor and against the defendant, Paul Chobanian, in an amount in excess of $50,000.00 which will reasonably and adequately compensate him for his damages, plus costs of suit, attorney's fees, and for such other and further relief this Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY OF 12 PERSONS**

### COUNT III
*(Defamation v. Jeffrey Rock)*

NOW COMES the plaintiff, Tyler Wallace, by and through his attorneys, Wham & Wham, and for Count III against defendant Jeffrey Rock, states as follows:

47. Plaintiff repeats and realleges paragraphs 1- 46, above, as paragraphs 1- 46 of Count III, herein.

48. During their encounter on the morning of February 25, 2021, Rock falsely claimed that Wallace had been sleeping in his office.

49. Rock repeated this false claim to CTA management.

50. As a direct and proximate result of Rock's defamatory claims, Wallace's employment at CTA was terminated causing him to lose wages and benefits that he would otherwise have earned and that he will continue into the future to lose wages and benefits. In addition thereto, Wallace has endured pain, suffering, severe emotional distress, mental anguish, and humiliation as a proximate result.

WHEREFORE, the plaintiff, Tyler Wallace, prays for judgment in his favor and against the defendant, Jeffrey Rock, in an amount in excess of $50,000.00

which will reasonably and adequately compensate him for his damages, plus costs of suit, attorney's fees, and for such other and further relief this Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY OF 12 PERSONS**

### COUNT IV
*(Intentional Interference with Prospective Economic Advantage v. Jeffrey Rock)*

NOW COMES the plaintiff, Tyler Wallace, by and through his attorneys, Wham & Wham, and for Count IV against defendant Jeffrey Rock, states as follows:

51. Plaintiff repeats and realleges paragraphs 1- 50, above, as paragraphs 1- 50 of Count IV, herein.

52. At the time of his discharge, Wallace had a reasonable expectation of continued employment with CTA, and Rock knew or should have known of this expectancy.

53. On February 25, 2021, Rock falsely claimed to have caught Wallace sleeping during a shift.

54. Shortly thereafter, Rock repeated his false claim that Wallace was sleeping to CTA management.

55. Rock knew that reporting an employee for sleeping during a shift was likely to and/or could result in an employee's employment with CTA being terminated.

56. CTA subsequently terminated Wallace's employment, allegedly as a result of the false claims made by Rock.

57. As a direct and proximate result of Rock's false claims, Wallace's employment at CTA was terminated causing him to lose wages and benefits that he would otherwise have earned and that he will continue into the future to lose wages and benefits. In addition, thereto, Wallace has endured pain, suffering, emotional distress, mental anguish, and humiliation as a proximate result.

WHEREFORE, the plaintiff, Tyler Wallace, prays for judgment in his favor and against the defendant, Jeffrey Rock, in an amount in excess of $50,000.00 which will reasonably and adequately compensate him for his damages, plus costs of suit, attorney's fees, and for such other and further relief this Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY OF 12 PERSONS**

WHAM & WHAM LAWYERS
212 East Broadway, P.O. Box 549
Centralia, Illinois 62801
Phone: (618) 532-5621
Fax (618) 532-5055
jdp@whamlawyers.com
ryan@whamlawyers.com
*Attorneys for Plaintiff,*
*Tyler Wallace*

By: _____
James D. Price     IL #6336587
Ryan D. Rich      IL#6306824

## AFFIDAVIT PURSUANT TO RULE 222(b)

The undersigned attorney for the plaintiff, Tyler Wallace, being duly sworn, on oath, deposes and states the total of money damages sought in this matter exceeds $50,000.00.

_____
James D. Price

SUBSCRIBED and SWORN to before me this __7th__ day of __May__, 20__21__.

_____
NOTARY PUBLIC

"OFFICIAL SEAL"
MELISSA HULL
NOTARY PUBLIC-STATE OF ILLINOIS
MY COMMISSION EXPIRES FEB. 8, 2022