IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYLER WALLACE,<br><br>   Plaintiff,<br><br>v.<br><br>CONTINENTAL TIRE THE AMERICAS LLC,<br>PAUL CHOBANIAN, AND<br>JEFFREY ROCK,<br><br>   Defendants. | Case No. 21-cv-00562-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

  This matter comes before the Court for consideration of two Motions to Dismiss, one filed by defendant Continental Tire the Americas LLC ("Continental") (Doc. 23) relevant to Counts I and II of plaintiff Tyler Wallace's First Amended Complaint (Doc. 20) and one filed by defendants Paul Chobanian and Jeffrey Rock (Doc. 21) relevant to Counts III–V of the same First Amended Complaint. Having been fully informed of the issues presented, this Court denies in full defendant Continental's Motion to Dismiss (Doc. 23) and denies in part and grants in part Chobanian and Rock's Motion to Dismiss (Doc. 20).

### Relevant Factual And Procedural Background

  Plaintiff Tyler Wallace is a former employee of Continental. Paul Chobanian and Jeffrey Rock are both current employees at Continental. Wallace's original complaint was filed on May 7, 2021 in the Circuit Court for the Second Judicial Circuit in Jefferson County, Illinois and directed against Continental, Chobanian, and Rock. With the

consent of Chobanian and Rock, Continental removed the case to this Court on June 9, 2021 (Doc. 1). In his First Amended Complaint filed on July 27, 2021, Wallace asserted five claims for relief, the first two (2) directed at Continental, and the following three (3) claims directed at Chobanian and Rock (Doc. 20). Counts I and II are retaliatory discharge claims, the first under Illinois law and the second under the Family and Medical Leave Act (29 U.S.C. § 2601, "FMLA"). Count III is an intentional infliction of emotional distress ("IIED") claim directed against Chobanian concerning alleged conduct on the Company's Microsoft Teams virtual messaging service on or about January 24, 2021 (Doc. 20, ¶¶ 9–10). On the date in question, which was the third anniversary of Wallace's close friend's suicide, Chobanian sent a message to the effect of ". . . [a]t least my brother is still breathing" (Doc. 20, ¶ 6–10).[1] Finally, Counts IV and V, for defamation and intentional interference with prospective economic advantage ("IIPEA"), respectively, are directed against Rock and involve an incident where Rock reported Wallace for "sleeping on the job" while on-shift at Continental on or about February 25, 2021 (Doc. 20, ¶¶ 30–34). Wallace claims that he was not asleep, but rather that he was awake and on his phone during his scheduled lunch break when this incident occurred (*Id.*).

## APPLICABLE LAW AND LEGAL STANDARDS

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief

---

[1] As stated in his First Amended Complaint, Wallace considered this close friend "to be his brother" and states that this sibling-like relationship was "recognized in the community as such . . ." (Doc. 20, ¶ 6).

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court of Appeals for the Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but it asks for 'more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

## ANALYSIS

Because the instant suit was filed in Illinois and both parties have applied Illinois law, the Court applies the same. *See Ryerson Inc. v. Fed. Ins. Co.*, 676 F.3d 610, 611–12 (7th Cir. 2012). Each of the five (5) Counts alleged in Wallace's First Amended Complaint is addressed in turn.

**Count I: Retaliatory Discharge under Illinois Law**

The State of Illinois recognizes common law retaliatory discharge claims. *See Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 184–85 (1978), *Palmateer v. Int'l Harvester Co.*,

85 Ill. 2d 124, 129 (1981). In order to state a claim for retaliatory discharge, the plaintiff must prove that: (1) the employee was discharged by the employer, (2) the discharge was retaliatory based on the employee's activities, and (3) the discharge violates a clear public policy mandate. *Michael v. Precision All. Grp., LLC*, 2014 IL 117376, ¶ 31. The plaintiff bears the burden to prove causation under Illinois law. *Id.* ¶ 36.

The main tension here is whether or not Wallace's exercise of worker's compensation benefits was the principal reason for his purported retaliatory discharge. Wallace argues that his claim for relief does not expressly preclude his exercise of workers' compensation benefits being the primary reason for his termination, even though he alleges that his wrongful discharge was also due to his application for FMLA benefits and because he reported Continental's alleged failure to address his ongoing health concerns (Doc. 32, p. 7). Continental argues that, in order for Wallace to adequately plead his claim for retaliatory discharge, the employer's retaliation must be the primary reason for his termination (Doc. 23, p. 2). Continental argues that causation has not been established because Wallace did not explicitly plead as such (*Id.*).

Wallace argues that his pleading is not "incompatible with Plaintiff being terminated *primarily* in retaliation for exercising his rights," (Doc. 32, p. 7, emphasis in original). Continental cites *Matros v. Commonwealth Edison Co.* for the proposition that the scope of retaliatory discharge claims is narrow and that "an employee must show that he was terminated *because* of his actual or anticipated exercise of workers' compensation rights." 2019 IL App (1st) 180907, ¶ 139 (emphasis in original) (citing *Michael*, 2014 IL 117376, ¶ 31). Continental takes this to mean that the plaintiff's argument must indicate that retaliation for exercising worker's compensation rights

must be the primary or sole reason for termination, to the exclusion of other arguments (Doc. 24, pp. 6–7).

Continental misunderstands the thrust of the Illinois Supreme Court's analysis of causation as discussed in *Matros*. *See* 2019 IL App (1st) 180907, ¶¶ 137–39 (discussing *Michael*, 2014 IL 117376, ¶ 38). Rather than insisting that there can be only one *primary* reason for retaliation, the *Matros* court's analysis of *Michael* indicates that, should the employer provide "a valid, nonpretextual basis for discharging its employees *and the trier of fact believes it*, the causation element required to be proven is not met." *Matros*, 2019 IL App (1st) 180907, ¶ 137 (emphasis in original) (quoting *Michael*, 2014 IL 117376, ¶ 32). Thus, *Matros* does state that the exercise of worker's compensation must be the only reason for retaliation (e.g. no other retaliatory discharge claims can be pleaded), but rather it indicates that a retaliatory discharge claim cannot survive if a single valid, nonpretextual reason for the employer's conduct exists. *Id.* Thus, the Illinois Supreme Court's statement that a plaintiff cannot establish causation if "retaliation was *one* of several motives leading to the employee's discharge and therefore 'a' proximate cause of that discharge" relates to the existence of a valid, nonpretextual reason for discharge and does not proscribe the presence of multiple invalid, pretextual (i.e retaliatory) reasons for the employee's discharge. *Matros*, 2019 IL App (1st) 180907, ¶ 138 (emphasis in original).

As stated above, Wallace must plead facts that are plausible, not just possible. Wallace alleges that the retaliation in question was because: (1) Continental refused to address his ongoing health and workplace concerns (Doc. 20, ¶¶ 17–18), (2) when asked about coverage for his medical bills, Continental instructed Wallace not to file a worker's

compensation claim (which he later did) (Doc. 20, ¶¶ 19–20), and (3) that, after applying for FMLA leave, Continental did not inform him that his FMLA leave was approved (Doc. 20, ¶¶ 28–29). Accepting the allegations in Wallace's First Amended Complaint as true, he worked for Continental for nine (9) years and did not incur a single disciplinary infraction during that time (Doc. 20, ¶¶ 5, 37–39). Indeed, he was being considered for management positions at Continental (Doc. 20, ¶ 39). With this exemplary record in mind, the fact that Continental's human resources staff told Wallace not to file a worker's compensation claim and then terminated him after he did file a complaint, it is plausible that the worker's compensation claim was the primary reason for Wallace's termination (Doc. 20, ¶¶ 21–22, 24).

Wallace's argument vis-à-vis retaliatory discharge does rely upon a "suspicious timing" argument. Suspicious timing by itself does not rise to a level sufficient to plead retaliatory discharge. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012) (stating that suspicious timing can rarely constitute a triable issue by itself and that a time period more than a few days "militate[s] against allowing an inference of causation"). The fact that Wallace's termination was five (5) weeks after his application for FMLA was approved (which itself was after his conversation with Continental's human resources representative) cuts against Wallace's argument for retaliation (Doc. 20, ¶ 17). That being said, when taken in context with the entirely of Wallace's pleadings, it is not catastrophic at the Motion to Dismiss stage.

To summarize, Wallace's argument that "there is nothing . . . incompatible with Plaintiff being terminated *primarily* in retaliation for exercising his rights" (Doc. 32, p. 7) is sufficient to allow him to survive Continental's Motion to Dismiss. *Matros*, 2019 IL

App (1st) 180907, ¶ 138 (discussing *Michael*, 2014 IL 117376, ¶ 38). While Continental states that the reason for Wallace's termination was him "sleeping on the job" on February 25, 2021, the lack of evidence of a trend in Wallace's behavior would seem to indicate that it is at least plausible that a jury could find that this reason was pretextual (Doc. 20, ¶¶ 30–35).

Wallace has successfully pleaded a plausible set of facts to meet his burden to establish the second element of a wrongful discharge claim–that he was terminated for engaging in protected activities. *See Michael*, 2014 IL 117376, ¶ 31. For these reasons, Count I of Wallace's First Amended Complaint is sufficiently pled to survive Continental's Rule 12(b)(6) Motion to Dismiss.

**Count II: Retaliation under FMLA**

In order to succeed in an FMLA retaliatory discharge action, the allegedly aggrieved employee must prove that: (1) he or she engaged in a protected activity, (2) he or she experienced an adverse employment action, and (3) causation can be established between the two. *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015) (citing *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009)).

Wallace relies on the "convincing mosaic of circumstantial evidence" to prove causation in accordance with the third element in the test above (Doc. 32, p. 8). He argues that causation is established by the confluence of the fact that Continental approved his FMLA leave (but did not inform him of its approval) with the fact that he was terminated for allegedly "sleeping on the job" during a shift when he should have been on FMLA leave (Doc. 32, pp. 8–9, *see* Doc. 20, ¶¶ 15–16, 26–35). As previously discussed, Wallace alleges that he was "an exemplary employee" and that he was "a

candidate being considered for multiple managerial positions within the company" (Doc. 20, ¶ 39).

Conversely, Continental argues that the "convincing mosaic" test was explicitly overruled in the Seventh Circuit (Doc. 33, p. 4, citing Doc. 32, p. 8). *Ridings v. Riverside Med. Ctr.*, 537 F.3d 755, 771 (7th Cir. 2008) (citing *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006)). Continental's assertion is partially correct; Circuit Judge Easterbrook's opinion in *Ortiz v. Werner Enters., Inc.* does not expressly overrule *Phelan*, but rather states that "'convincing mosaic' is not a legal test." 834 F.3d 760, 764–65 (7th Cir. 2016) (discussing the "convincing mosaic" test used in *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006) and *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004)). Judge Easterbrook is explicit that the cases in question (including *Phelan*) were not necessarily wrongly decided, but that they used "convincing mosaic" as a legal standard when it should not be regarded or used as such. *Id. Ortiz* does explicitly overrule the separation of "direct" and indirect" evidence in cases including *Rhodes*, on which *Phelan* relies in its discussion of the "convincing mosaic" test. *Ortiz*, 834 F.3d at 765 (7th Cir. 2016).

Wallace directly cites *Ridings*, a case that relied on the "convincing mosaic" precedent from *Phelan* (Doc. 32, p. 8). *Ridings*, 537 F.3d at 771 (citing *Phelan*, 463 F.3d at 779). Even though Wallace relies on the spurious "convincing mosaic" standard (Doc. 32, pp. 8–9), the facts he has alleged must be considered as a whole in the light most favorable to him in accordance with *Ortiz*. 834 F.3d at 765 (7th Cir. 2016) (stating that evidence should be evaluated "as a whole," instead of separating it into "direct" and "indirect" categories that are analyzed independently). Wallace alleges that he was not

informed that his FMLA leave was granted, that he showed up to work for a night shift on February 24–25, 2021, and that he was cited for "sleeping on the job," an act for which he was subsequently terminated without any other adverse employment events (Doc. 20, ¶¶ 37–39, Doc. 32, pp. 8–9). Thus, while Wallace's argument does use a legal test that is no longer valid, it does allege sufficient facts to indicate that Wallace's discharge may have been retaliatory when considered in the light most favorable to him.

Thus, like Count I of his First Amended Complaint, Count II is sufficiently pleaded to survive Continental's Motion to Dismiss (Doc. 23).

**Count III: Intentional Infliction of Emotional Distress**

Count III involves the allegedly inflammatory Microsoft Teams message sent to Wallace by Chobanian while at work on or about January 24, 2021 (Doc. 20, ¶¶ 9–10). In order to establish a claim for IIED under Illinois law, the plaintiff must establish that: (1) the defendant's conduct was "truly extreme and outrageous," (2) the defendant either intended or knew there was a high probability that his or her comments would cause "severe emotional distress," and (3) the defendant's conduct did indeed cause such severe emotional distress. *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (citing *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003)). *Feltmeier* is explicit that "to qualify as outrageous, the nature of the defendant's conduct must be so extreme as to go beyond *all possible bounds of decency* and be regarded as *intolerable* in a civilized society." *Feltmeier*, 207 Ill. 2d at 278 (emphasis added).

Furthermore, neither "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" nor conduct "characterized by malice or a degree of aggravation" meet the requirement that the conduct be "outrageous." *Richards*, 869

F.3d at 566 (quoting *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 567 (7th Cir. 1997)). Illinois courts construe workplace IIED narrowly as, "if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006) (quoting *Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 746 (2000)).

Outrageous conduct can be found when there is a clear abuse of power by an employer. *Naeem*, 444 F.3d at 605 (citing *Honaker v. Smith*, 256 F.3d 477, 491 (7th Cir. 2001)). In *Naeem*, the court found that the plaintiff, a pregnant woman, was subjected to clear abuses of power at work: her supervisor forced her to climb unstable metal stairs for work, sabotaged her equipment and files, publicly criticized her work, and increased her workload to ensure that she could not meet deadlines. *Naeem*, 44 F.3d at 606.

Wallace alleges that Chobanian's comments "not only caused severe emotional distress, but also resulted in physical manifestations that resulted in a hospitalization and further medical care" (Doc. 27, p. 3, see Doc. 20, ¶¶ 8–14). Continental argues that a Teams message in poor taste does not rise to the level of IIED. (Doc. 30, p. 1–2, *see* Doc. 27, p. 3–4). Comparing the facts in *Naeem* to those Wallace alleges in his First Amended Complaint, the allegations do not meet the standard to survive a Motion to Dismiss (Doc. 20). *Naeem*, 44 F.3d at 606.

Wallace argues that his particular susceptibility to emotional distress raises the impact of Chobanian's messages, as they occurred on the anniversary of the suicide of "a friend of Wallace's, whom he considered to be his brother . . ." (Doc. 20, ¶ 6). The Illinois Supreme Court does discuss susceptibility to emotional distress as one of three

Page 10 of 16

factors used to evaluate the "alleged outrageousness" of the defendant's conduct, along with the "power or control the defendant has over the plaintiff" and "whether the defendant reasonably believed its objective was legitimate." *Franciski v. Univ. of Chi. Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003) (*citing McGrath v. Fahey*, 126 Ill. 2d 78, 86–88 (1988)). Although Wallace alleges that he was especially susceptible on the day in question, this factor by itself does not raise Chobanian's actions to a level comparable with the treatment of Ms. Naeem. *Naeem*, 44 F.3d at 606. Additionally, Wallace has not alleged any facts that indicate that Chobanian was a supervisor or had any form of power or control over him (Doc. 20, ¶¶ 9–11, Doc. 27, pp. 3–4). Even though it would seem self-evident that Chobanian did not have any legitimate objective in writing what he did, this does not assist Wallace in multiplying the level of "outrageousness" to that required to plead an IIED claim.

Wallace next argues that a single, isolated incident is sufficient for an IIED claim. Illinois caselaw does support this contention, stating that "the intensity and duration of the distress are factors to be considered in determining the severity of the emotional distress." *Morrison v. Sandell*, 112 Ill. App. 3d 1057, 1060 (1983) (citing Restatement (Second) of Torts § 46 cmt. j, at 77 (Am. Law Inst. 1965)). That being said, the *Morrison* court ruled that an isolated incident of the defendant placing "toilet tissue and human waste matter in a file drawer [that the plaintiff] was about to use" did not rise to the level of a single incident qualifying for IIED liability. *Morrison*, 112 Ill. App. 3d at 1060 (1983). If a single event as repulsive as this does not rise to the level of outrageousness required to establish IIED, then, clearly, a Teams message also fails muster here, even in the circumstances Wallace alleges. Thus, while it is plausible that Chobanian's

comments were the proverbial straw that caused the degradation of Wallace's mental and physical health on a particularly troubling day, he has not pleaded facts that indicate that the Teams message rises to the level of outrageousness required to plead a claim for IIED.

Moreover, while Wallace describes the individual who committed suicide as a friend, albeit one "considered to be his brother," in his First Amended Complaint (Doc. 20, ¶ 6), he begins referring to him exclusively as a brother in his Response (Doc. 27, p. 3) to Continental's Motion to Dismiss (Doc. 21). This disingenuous omission cuts against the impact of Wallace's claims, as well.

Even when taking all inferences in Wallace's favor, his pleadings do not establish a plausible argument that Chobanian's Teams message rose to the level of extreme or outrageous conduct in accordance required to establish the first element of an IIED claim. Thus, Wallace has not made a colorable argument that he is entitled to IIED damages due to Chobanian's actions and Continental's Motion to Dismiss must be granted with respect to Count III.

**Count IV: Defamation**

To establish a claim for defamation under Illinois law, the plaintiff must show: (1) "that the defendant made a false statement about the plaintiff," (2) "that the defendant made an unprivileged publication of that statement to a third party," and (3) that the defendant's "publication caused damages." *Bd. of Forensic Doc. Exam'rs, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831 (7th Cir. 2019) (citing *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009)). In the event that a statement's "defamatory character is obvious and apparent on its face," damages are presumed under the defamation *per se* doctrine. *Id.*

(citing *Tuite v. Corbitt*, 224 Ill. 2d 490, 501 (2006)). Five categories of statements are considered defamation *per se* in Illinois:

> (1) [W]ords that impute a person has committed a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication.

*Green*, 234 Ill. 2d at 491–92 (citing *Van Horne v. Muller*, 185 Ill. 2d 299, 307 (1998)).

Illinois law recognizes a conditional privilege if the statements in question occurred "within a legitimate busines context." *Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 381 F.3d 717, 727 (7th Cir. 2004) (citing *Larson v. Decatur Mem'l Hosp.*, 236 Ill.App.3d 796, 799 (1992)). A conditional privilege applies when a statement is made by a defendant: "(1) in good faith; (2) with an interest or duty to be upheld; (3) limited in scope to that purpose; (4) on a proper occasion; and (5) published in a proper manner only to proper parties." *Id.* Once such a privilege has been established, "a plaintiff may overcome this challenge at the pleading stage by alleging the statement was made with actual malice–either knowledge of its falsity or in reckless disregard of the truth." *Ludlow v. Nw. Univ.*, 79 F. Supp. 3d 824, 845 (N.D. Ill. 2015).

Wallace argues that Rock's accusation and report of him "sleeping on the job" are a suitable basis for a defamation *per se* claim under the third category above (Doc. 27, pp. 9–10). He also claims that Rock abused his conditional privilege in failing to properly investigate whether or not Wallace was actually "sleeping on the job" (Doc. 27, pp. 10–12). *See Kopolovic v. Shah*, 2012 IL App (2d) 110383, ¶38 (citing *Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1027 (2001)). Continental responds by arguing that Wallace

has not provided legal authority to show how Rock's report fits the definition of defamation *per se* and that conditional privilege applies to Rock's communications with Continental (Doc. 22, pp. 10–16, Doc. 30, pp. 4–5).

Wallace's argument that Rock's statements fit the third defamation *per se* category are deficient, as his Response to Chobanian and Rock's Motion to Dismiss (Doc. 27) does not cite any relevant caselaw or legal authority to support this proposition, other than an Illinois practice guide. (Doc. 20, ¶¶ 61-64, Doc. 27, pp. 9–10). However, the plain language of the third category ("words that impute a person is unable to perform or lacks integrity in performing her or his employment duties") would clearly apply to the instant set of facts. *Green*, 234 Ill. 2d at 491–92 (citing *Van Horne v. Muller*, 185 Ill. 2d 299, 307 (1998)). Accepting Wallace's version of events as true, Rock's false report had a deleterious effect on Wallace, resulting in his termination from Continental after nine (9) years of incident-free service (Doc. 20, ¶¶ 5, 47–49, 62–64).

Moreover, there is a clear issue to be addressed through the discovery process. Wallace insists that he was not "sleeping on the job" and that Rock's accusation was false (Doc. 20, ¶¶ 62–64). Even with the deficient argument for defamation *per se*, Wallace has pleaded sufficient allegations to indicate that, viewing his pleading in the light most favorable to him, Rock failed to adequately investigate whether or not Wallace was actually sleeping (Doc. 20, ¶¶ 30–33). Therefore, it is plausible that Rock's failure to properly investigate before reporting Wallace rose to the level of "knowledge of its falsity or in reckless disregard of the truth." *Ludlow*, 79 F. Supp. 3d at 845.

Thus, viewing Wallace's argument in the light most favorable to him, Count IV alleges a plausible claim and Chobanian and Rock's Motion to Dismiss Count IV must be denied here.

**Count V: Intentional Interference with Prospective Economic Advantage**

In order to state a claim for IIPEA, the plaintiff must establish that: (1) he or she had "a reasonable expectation of entering into a valid business relationship," (2) the defendant had "knowledge of this expectation," (3) the defendant purposefully interfered to prevent "the plaintiff's expectation from becoming a valid business relationship," and (4) he or she is thus entitled to damages. *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005) (citing *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 511 (1991)).

Wallace's argument is based around the assumption that Rock was aware or should have been aware that Wallace was not actually "sleeping on the job," rendering his accusations false and defamatory (Doc. 27, p. 13). Continental responds with caselaw from the Northern District of Illinois, arguing that IIPEA can be proven "only if a third party was the actual decision-maker and [the defendant] acted in his own interest 'and totally unrelated to or antagonistic to the interest of the employer.'" *Drury v. Sanofi-Synthelabo, Inc.*, 292 F. Supp. 2d 1068, 1071 (N.D. Ill. 2003) (citing *Hoskins v. Droke*, No. 94–C 5004, 1995 WL 318817, at *5 (N.D. Ill. May 22, 1995)).

There is a legitimate issue regarding whether Wallace was sleeping or not when Rock cited him for "sleeping on the job." (Doc. 20, ¶¶ 31–32). However, and more importantly, as a security officer for Continental, Rock's primary motivation to maintain safety and security is presumably the same as Continental's in this regard. Even if Rock did have an improper motivation, there is no evidence in Wallace's First Amended

Complaint (Doc. 20) or his Response to Chobanian and Rock's Motion to Dismiss (Doc. 27) that establishes plausible facts in this regard. This dearth of factual background leaves Wallace's claim without sufficient basis to proceed, indicating that dismissal is proper for Count V.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** defendant Continental's Motion to Dismiss (Doc. 23) in the entirety. The Court also **DENIES** the Motion to Dismiss Count IV and **GRANTS** the Motion to Dismiss Counts III and V of defendants Chobanian and Rock's Motion to Dismiss (Doc. 21). Plaintiff Tyler Wallace has seven (7) days to file an amended complaint based on the parameters of this Order or he may file a motion for leave to amend.

**IT IS SO ORDERED.**

DATED:   March 7, 2022

> s/ *Stephen P. McGlynn*
> **STEPHEN P. McGLYNN**
> **U.S. District Judge**